25CA1760 Peo in Interest of HH 07-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1760
La Plata County District Court No. 25JV30000
Honorable Kim S. Shropshire, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of H.H., a Child,

and Concerning C.H.,

Appellant,

and

J.L.,

Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE TOW
Harris and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

---

Koy Dingboom Oates, LLC, Jeffrey C. Koy, Lauren Dingboom, Jordan Oates, Catherine Kleindl, Englewood, Colorado, for Appellee the People of the State of Colorado

Josie Burt, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

Genevieve Manco, Office of Respondent Parents' Counsel, Thorton, Colorado, for Appellee J.L.

¶ 1    C.H. appeals the judgment determining that he was not the legal father of H.H. (the child).  We affirm.

## I.    Background

¶ 2    C.H. and H.W. (mother) began their relationship in 2009 and engaged in a commitment ceremony at some point in 2011 or 2012 while they were living in Oregon, a state that does not recognize common law marriage.  Later, mother also had a relationship with J.L., which resulted in a pregnancy.  C.H. and mother continued their relationship; C.H. was present at the child's birth and listed on the child's birth certificate.  After the child's birth, mother and C.H. began raising the child together, though C.H. made it clear to the child that he was not the child's biological father.  C.H., mother, and the child lived in multiple states until eventually settling in Colorado to allow the child to be closer to J.L.'s relatives.

¶ 3    In 2024, mother passed away.  The child was in C.H.'s care for a week, but then C.H. was arrested after he allowed the child to ride on top of C.H.'s vehicle while C.H., who was intoxicated at the time, drove the vehicle around a parking lot.  In connection with these charges, a protection order prohibited C.H. from having contact

with the child. As a result of this incident, the child was placed with J.L.'s parents.

¶ 4 In 2025, J.L.'s parents reported they could no longer care for the child. Based on this development, the La Plata Department of Human Services filed a petition in dependency or neglect concerning the child. The Department also sought to determine the child's paternity under the Uniform Parentage Act (UPA), §§ 19-4-101 to -130, C.R.S. 2025, and named both C.H. and J.L. as respondents in the petition.

¶ 5 Later, the juvenile court held a paternity hearing. C.H. claimed that he and the child's mother were common law married. At the conclusion of the evidentiary hearing, the court invited the parties to file briefs on the issue. After considering the evidence and the post-hearing briefs, the court determined in a written order that J.L. was entitled to the biological presumption and that C.H. was not entitled to any parentage presumption. Accordingly, the court adjudicated J.L. the child's legal father.

## II. Parentage Presumptions

¶ 6    C.H. contends that the juvenile court erred by failing to consider whether he was entitled to the birth certificate or holding out presumptions. We disagree.

### A. Standard of Review and Applicable Law

¶ 7    We review de novo whether the juvenile court applied the correct legal standard. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 42. But we defer to the court's factual findings if they are supported by the record. *Id.* As pertinent to this case, we apply clear error review to a court's factual findings underlying the determination of whether a common law marriage existed. *In re Marriage of LeFleur*, 2021 CO 3, ¶ 50. But we review the court's ultimate determination of whether parties were common law married for an abuse of discretion. *Id.*

¶ 8    A juvenile court may determine a child's parentage as part of a dependency or neglect proceeding, *People in Interest of J.G.C.*, 2013 COA 171, ¶ 10, but must follow the procedures outlined in the UPA when doing so, *People in Interest of O.S-H.*, 2021 COA 130, ¶ 40.

¶ 9    Under the UPA, the juvenile court must first determine whether one of the statutory presumptions of parentage in section

19-4-105(1) applies. *People in Interest of C.L.S.*, 313 P.3d 662, 666 (Colo. App. 2011). As pertinent to this appeal, a person is a presumed parent if (1) the person and the parent who gave birth to the child were married and the child was born during the marriage, (marriage presumption); (2) "[a]fter the child's birth, the person and the parent who gave birth to the child have married" or attempted to do so, and the person is, with their consent, named on the child's birth certificate (birth certificate presumption); or (3) "the person receives the child into the person's home and openly holds out the child as the person's natural child," (holding out presumption). § 19-4-105(1)(c)(II), (d). A biological father is also a presumed parent (biological presumption). *See* § 19-4-105(1)(f).

¶ 10   Second, if a presumption arises, it may only be rebutted by clear and convincing evidence. § 19-4-105(2)(a); *K.L.W.*, ¶ 70. If competing presumptions arise, the court must then "resolve the competing parentage presumptions and determine which should control based on the weightier considerations of policy and logic." *See K.L.W.*, ¶ 70. The result of this process is to render one person the child's legal parent, while the other person becomes a "nonparent." *C.L.S.*, 313 P.3d at 667.

## B. Analysis

¶ 11    C.H. argues that the juvenile court erred when it did not make detailed findings as to each presumption and that he was entitled to both the birth certificate and holding out presumptions. We discern no reversible error.

¶ 12    We begin by observing that both the marriage presumption and the birth certificate presumption require the parties to have been married (the former requiring marriage before the child's birth and the latter requiring it after). In its written ruling, however, the juvenile court only explicitly addressed the marriage presumption. In doing so, however, the court made extensive findings regarding the issue and concluded that no such marriage existed. Thus, the court held that C.H. had failed to establish that he was entitled to the marriage presumption.

¶ 13    On appeal, C.H. does not assert that he is entitled to the marriage presumption. Rather, he contends that the juvenile court should not have stopped there — that it should have gone on to consider the applicability of the birth certificate and holding out presumptions. We conclude that any error in not expressly addressing the birth certificate presumption was harmless. And we

conclude that C.H. did not preserve his claim related to the holding out presumption.

### 1.    Birth Certificate Presumption

¶ 14    First, we note that in his post-hearing briefing on the common law marriage issue, C.H. explicitly invoked the marriage presumption — and *only* the marriage presumption — arguing that C.H. and mother were common law married before the child was born.  Nevertheless, we also note that at the conclusion of the hearing, the court observed that it "would need to make that finding [whether there was a common law marriage] for at least the presumption under (1)(c)(II)" — the birth certificate presumption.  Thus, the court was aware that the birth certificate presumption was at issue in the case.

¶ 15    We therefore turn to whether the juvenile court erred when it determined that C.H. and mother were not common law married.  We conclude it did not.

¶ 16    Notably, C.H. does not appear to argue that the juvenile court applied the wrong legal test to the question of whether C.H. and mother were common law married.  Nor could he, as the court correctly stated that proof of a common law marriage requires

"mutual consent or agreement of the couple to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement." *Hogsett v. Neale*, 2021 CO 1, ¶ 49. Instead, C.H. appears to challenge the court's determination of the facts underlying the claim, contending that the evidence that he and mother held themselves out as married was "unrefuted."

¶ 17    But C.H. ignores the fact that the juvenile court heard evidence that would support a determination that C.H. and mother had, in fact, neither agreed to be married nor held themselves out as such. Specifically, the court noted that (1) "they did not commingle what limited assets they had, nor did they proactively engage in financial relationships that required absorbing the liability of the other"; (2) C.H. testified that mother listed her status as single in subsidized housing and Medicaid applications; and (3) C.H. reported that mother "always" filed her taxes as single. Perhaps most compellingly, the court found that C.H. and mother acted with the intent "to not be perceived as married [toward] specific agencies and people such that their benefits and financial stability would not be negatively impacted."

¶ 18    Because the record supports the juvenile court's factual findings, we cannot say they are clearly erroneous.  *See LeFleur*, ¶ 50.  And in light of these findings, we discern no abuse of discretion in the court's determination that C.H. and mother were not common law married.  *See id.*

¶ 19    Finally, because the parties were never common law married, C.H. cannot establish that he is entitled to the birth certificate presumption.  Any absence of an explicit analysis of that presumption thus does not require reversal.

### 2.    Holding Out Presumption

¶ 20    As to C.H.'s claim that he is entitled to the holding out presumption, we conclude that he did not preserve this argument.

¶ 21    We acknowledge that neither the Department nor the guardian ad litem raise lack of preservation.  (Both parties acknowledge, however, that the trial court did not explicitly analyze this presumption — without apparently recognizing that this void resulted from the fact that the court had no reason to know this presumption was relevant given the lack of any discussion of or reliance on it by C.H.)  Nevertheless, we generally limit our appellate review to issues presented to and ruled on by the juvenile court.

*People in Interest of M.B.*, 2020 COA 13, ¶ 14. And we have an independent obligation to determine whether an issue was preserved and thus is properly before us. *People v. Carter*, 2021 COA 29, ¶ 13.

¶ 22 Notably, C.H. does not identify where in the record C.H.'s reliance on the holding out presumption was preserved — or even mentioned. Nor can we identify any invocation of this presumption in the transcript of the hearing or any filing C.H. submitted to the juvenile court. Indeed, the transcript of the hearing demonstrates unequivocally that C.H.'s parentage claim relied only on the marriage and birth certificate presumptions, which in turn rested on his claim that he and mother were common law married.

¶ 23 To preserve an issue, a party must present the court with an adequate opportunity to make findings of fact and legal conclusions on a particular claim. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 18. Doing so requires the party to present the "sum and substance" of the argument later raised on appeal. *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010). And raising an argument under one presumption does not preserve an argument that a different presumption applies. *See In re Estate*

9

*of Ramstetter*, 2016 COA 81, ¶ 67 ("A party does not preserve an issue merely by advancing a related theory before the district court . . . ." (quoting *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131m 1142 (10th Cir. 2014))).

¶ 24 Because C.H. did not argue before the juvenile court that the holding out presumption arose, he has not preserved that argument for appeal. We thus decline to address it.

### III. Weighing Competing Presumptions

¶ 25 C.H. also contends that the juvenile court erred by failing to weigh the competing presumptions. However, we have concluded that the juvenile court did not err when it determined that no presumptions of parentage apply to C.H. Thus, there were no competing presumptions to resolve. *See* § 19-4-105(2)(a) (explaining that a court need only consider the weightier considerations of policy and logic when two or more presumptions arise and conflict with each other). The court, therefore, did not err.

### IV. Disposition

¶ 26 The judgment is affirmed.

JUDGE HARRIS and JUDGE BROWN concur.